**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROY MICHAEL HOGAN, JR. | : | |
| | : | |
| Appellant | : | No. 5 MDA 2023 |

Appeal from the Judgment of Sentence Entered September 21, 2022
In the Court of Common Pleas of Schuylkill County
Criminal Division at No(s):  CP-54-CR-0000616-2018,
CP-54-CR-0000617-2018

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                   **FILED:  NOVEMBER 30, 2023**

Roy Hogan appeals the judgment of sentence imposed by the Schuylkill County Court of Common Pleas after a jury convicted him of two counts of attempted murder, burglary, and related offenses at Criminal Docket CP-54-CR-0616-2018 and criminal trespass at Criminal Docket CP-54-CR-0617-2018. Hogan argues on appeal that the sentencing court erred by applying the deadly weapon-used sentencing enhancement, as opposed to the deadly weapon-possessed sentencing enhancement, to his burglary conviction at docket number 0616. Both the sentencing court and the Commonwealth agree with Hogan, as do we. We therefore vacate the judgment of sentence for the

_____

[*] Retired Senior Judge assigned to the Superior Court.

burglary conviction and remand for resentencing consistent with this memorandum.

The trial court provided a detailed recitation of the factual background of this matter, but for purposes of this appeal, we recount only a general summary of the relevant facts. On March 18, 2018, Hogan entered the residence of his former girlfriend, Brook Ditzler, though Ditzler was not home. When Ditzler arrived home later with her boyfriend, Michael Seltzer, and her friends Andrew Matlock and Mallory Grieger, Ditzler found Hogan upstairs on her bed with a knife. Ditzler called 911, but Hogan left the residence before the police arrived.

Ditzler, Seltzer, Matlock and Grieger went to sleep in Ditzler's living room. They awoke to find Hogan in the living room. An altercation ensued between Matlock and Hogan, and Matlock was cut from his ear to his chin with a knife and stabbed in the shoulder. Seltzer was also stabbed eight times. After police once again arrived at the residence, Hogan ran out. He was ultimately arrested and charged with a slew of offenses related to the incident, including two counts of attempted murder, burglary, and possession of an instrument of crime ("PIC") at docket number 0616 and criminal trespass at docket number 0617.

The matters proceeded to a jury trial. Ditzler, Matlock, Seltzer and Geiger all testified for the Commonwealth. Hogan testified in his own defense. He stated that on March 18, 2018, he first went to Ditzler's house and, without

her permission, entered through her basement door, thinking she would be home alone. *See* N.T., 2/11/2019, at 308-309. According to Hogan, he went upstairs and fell asleep on Ditzler's bed with a knife in his pocket. *See id.* at 309-310. He stated he knew Ditzler would call the police, and that he planned to pull the knife out in the presence of the police and have the police shoot him. *See id.* at 321.

Hogan maintained that when Ditzler came home and woke him up, he left the house. He testified he then entered Ditzler's residence a second time through an unlocked back door. *See id.* at 323. He recounted he still had the knife in his pocket, but he essentially maintained that he used that knife in self-defense. *See id.* at 324-328.

The jury nonetheless found Hogan guilty of two counts of attempted murder, burglary, and PIC, among other offenses, at docket number 0616. It also found him guilty of criminal trespass at docket number 0617.

The trial court sentenced Hogan to an aggregate term of 35 to 70 years' imprisonment. Hogan ultimately filed a PCRA petition, arguing that his sentence was illegal. The PCRA court agreed and ordered a new sentencing hearing.

The matter was reassigned to a different sentencing court due to the trial judge's retirement, and a new sentencing hearing was held on September 16, 2022. At the hearing, defense counsel essentially argued that the deadly weapon-used enhancement provision was not applicable to either the burglary

conviction at docket number 0616 or the criminal trespass conviction at docket number 0617. The sentencing court agreed that only the deadly weapon-possessed enhancement provision applied to the trespass conviction, and sentenced Hogan to the standard range of three to six months for that conviction. However, the court applied the deadly weapon-used enhancement provision to Hogan's burglary conviction, which prescribed a standard sentencing guideline range of 40 to 54 months' imprisonment. The court sentenced Hogan to 54 to 108 months' imprisonment for the burglary conviction.

The court also sentenced Hogan to 96 to 192 months' imprisonment on each of the two attempted murder convictions, to be served consecutively. The court ordered the sentence on the burglary conviction to be served concurrently to Hogan's sentence for the second attempted murder conviction. In total, the court sentenced Hogan to an aggregate term of imprisonment of 253 to 506 months.

Hogan filed a post-sentence motion, which the court denied in an order entered on December 9, 2022. Hogan then filed a single notice of appeal listing both criminal docket numbers in the caption. The court ordered Hogan to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. In the statement, Hogan raised five alleged errors, including a claim that the sentencing court erred in applying the deadly weapon enhancement to both

the burglary conviction at docket number 0616 and the criminal trespass conviction at docket number 0617.

In its responsive opinion, the court disagreed with Hogan that it had improperly applied the deadly weapon-possessed enhancement to the criminal trespass conviction at docket number 0617. However, it agreed with Hogan that it had erred by applying the deadly weapon-used enhancement to the burglary conviction at docket number 0616. The sentencing court found that, pursuant to this Court's decision in **Commonwealth v. Tavarez**, 174 A.3d 7 (Pa. Super. 2017), the court should only have applied the deadly weapon-possessed enhancement to the burglary conviction.

On appeal, Hogan abandons his claim regarding the deadly weapon enhancement as applied to his criminal trespass conviction at criminal docket 0617. He raises only one issue, namely, that the sentencing court erred by applying the deadly weapon-used enhancement to the burglary conviction at docket number 0616.

Before we are able to reach the merits of Hogan's sole issue on appeal, we acknowledge, as an initial matter, that Hogan's filing of a single notice of appeal from an order involving two separate docket numbers implicates **Commonwealth v. Walker,** 185 A.3d 969 (Pa. 2018), *reversed in part by* **Commonwealth v. Young**, 265 A.3d 462 (Pa. 2021). In **Walker**, our Supreme Court held that appellants are required to file separate notices of appeal when a single order resolves issues arising on more than one lower

- 5 -

court docket. ***See Walker,*** 185 A.3d at 976. ***Walker*** announced a prospective bright-line rule that a failure to file separate notices of appeal in these circumstances would result in the quashal of the appeal. ***See id.*** at 977.

However, this Court carved out several exceptions to the rule announced in ***Walker***, one of which applies to this case. In ***Commonwealth v. Larkin***, this Court held that we would overlook the requirements of ***Walker*** and decline to quash a single notice of appeal from an order resolving multiple lower court docket matters where a breakdown occurs in the court system, and a defendant is misinformed or misled regarding his appellate rights. ***See Larkin***, 235 A.3d 350, 354 (Pa. Super. 2020) (*en banc)*.

Here, the December 9, 2022 order denying Hogan's post-sentence motion failed to provide notice to Hogan of his appellate rights in contravention of Pa.R.Crim.P. 720 (B)(4). As we conclude this constitutes a breakdown in the court system, we can proceed to the substance of Hogan's appeal pursuant to ***Larkin.***

Hogan maintains on appeal that the sentencing court properly applied ***Tavarez*** and determined that it had erred by applying the deadly weapon-used enhancement, rather than the deadly weapon-possessed enhancement, to Hogan's sentence for the burglary conviction. The Commonwealth concedes ***Tavarez*** controls and mandates the conclusion advocated by Hogan. We agree.

Under the deadly weapon enhancement provisions of the Sentencing Guidelines, an enhancement "shall apply to each conviction offense for which a deadly weapon is possessed or used." 204 Pa. Code § 303.10(a)(4). The sentencing court may not disregard an applicable enhancement when determining the appropriate sentencing ranges. **See Tavarez**, 174 A.3d at 10. Moreover, a sentencing court must always determine the correct starting point for the sentencing range under the guidelines, and if it errs in doing so, this Court will vacate the judgment of sentence and remand for resentencing. **See id.** at 11.

The deadly weapon-possessed enhancement provides that when a court determines the offender possessed a deadly weapon during the commission of the offense, the court shall consider the Deadly Weapon Enhancement/Possessed Matrix in Section 303.17(a). **See** 204 Pa. Code § 303.10(a)(1). Under Section 303.10(a)(1), an offender possesses a deadly weapon if he has any of the listed weapons on his person or within his immediate control. **See id.**

Meanwhile, the deadly weapon-used enhancement provides that when a court determines the offender used a deadly weapon during the commission of the offense, the court shall consider the Deadly Weapon Enhancement/Used Matrix in Section 303.17(b). **See** 204 Pa. Code § 303.10(a)(2). Under Section 303.10(a)(2), an offender uses a deadly weapon if the offender employs one

of the listed weapons in a way that threatened or injured another individual. *See id.*

In *Tavarez*, the defendant, like Hogan here, complained that the sentencing court erroneously applied the deadly weapon-used enhancement to his burglary conviction because he had not used a deadly weapon to enter the victims' residence but rather, had only used the weapon once he encountered the victims inside their residence.

This Court agreed with Tavarez. In doing so, the Court noted that to establish the use of a deadly weapon under the language of Section 303.10(a)(2), the record must show that the defendant used the weapon to threaten or injure the victim while committing the particular offense. *See Tavarez*, 174 A.3d at 11. The particular offense at issue in *Tavarez* was burglary, which *Tavarez* explained is "complete at the moment of entry into an occupied structure with the intent to commit a crime therein." *Id.* at 12. As such, "whatever felony is committed in the building broken into is separate and distinct from the offense of breaking and entering into that [structure]." *Id.* (citation omitted). Applying those principals to the facts at hand, the *Tavarez* Court stated:

> We conclude that the record did not establish Tavarez's "use" of a [deadly weapon] during the commission of the burglary under 204 Pa. Code § 303.10(a)(2)… [T]he burglary was complete at the moment Tavarez unlawfully entered the residence with the intent to commit the crime of robbery therein. The facts placed on the record … established only that Tavarez possessed a [deadly weapon] when he entered the residence; there was no showing that he used the [deadly weapon] to gain entry into the residence

or to threaten the victims while entering the residence. Tavarez did not encounter the victims until he and his co-conspirators went upstairs to rob them. Thus, … the record does not support a finding that he employed the [deadly weapon] in a way that threatened or injured the victims during the commission of the burglary.

*Id.* at 13.

The ***Tavarez*** court therefore determined that the sentencing court erred by applying the deadly weapon-used enhancement rather than the deadly-weapon-possessed enhancement and vacated Tavarez's judgment of sentence.

Applying ***Tavarez*** to the facts here, the sentencing court stated:

We have a similar factual scenario [to that in ***Tavarez***] where Hogan testified that he intended to use the knife to commit suicide by cop, but did not actually employ the knife in a way that threatened or injured any of the victims during the commission of the burglary of Ditzler's home. This court is of the opinion that we should have applied the "possession" enhancement rather than the "use" enhancement for the burglary based on the testimony and record.

Trial Court Opinion, 2/27/2023, at 19.

The Commonwealth agrees, as do we, that pursuant to ***Tavarez***, the sentencing court erred by applying the deadly weapon-used enhancement provision and the matter must once again be remanded for a new sentencing hearing. ***See*** Commonwealth's Brief at 3 (Hogan "did not employ the knife to make entry into the home … [as he] encountered no resistance in his efforts to enter the home. [The] facts are nearly identical [to] the facts in ***Tavarez*** and are not distinguishable" and the sentencing court therefore erred in

- 9 -

applying the deadly weapon-used enhancement as opposed to the deadly weapon-possessed enhancement under *Tavarez*).

Finally, we conclude that because the sentence for the burglary conviction is entirely subsumed by the consecutive sentences for attempted murder, vacation of the burglary sentence does not impact the trial court's sentencing scheme. We therefore vacate only the burglary sentence and remand for resentencing consistent with this memorandum.

Judgment of sentence vacated. Matter remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/30/2023